**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RECICEL AUTOMOBILSYSTEME
GMBH, AND RECTICEL INTERIORS
NORTH AMERICA, INC.,

                                                  Case No. 2:10-cv-14097-SFC
               PLAINTIFFS,           HON. SEAN F. COX

v.

AUTOMOTIVE COMPONENTS
HOLDINGS, LLC

               DEFENDANT.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO DISMISS DEFENDANT'S INEQUITABLE CONDUCT <u>COUNTERCLAIM</u>
<u>AND STRIKE AFFIRMATIVE DEFENSES</u>**

      Currently before the Court is Plaintiffs' Motion to Dismiss Defendant's Inequitable Conduct Counterclaim and Strike Affirmative Defenses (Docket No. 24). The Court finds that the issues in this motion have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore Orders that the motion will be decided upon the briefs.

**I.    INTRODUCTION**

      This is a patent infringement case. Defendant has filed a counterclaim for inequitable conduct and pled affirmative defenses *inter alia* of inequitable conduct, estoppel, and laches.

      This motion raises two issues.

      The first issue the Court must address is whether Defendant has pled its inequitable conduct counterclaim and affirmative defense with sufficient "particularity" as required by the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure and the recent case of *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).

      The second issue the Court must address is whether pleading requirements set forth in the Supreme Court cases of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*,

1

129 S.Ct. 1937 (2009) apply to general affirmative defenses such as estoppel and laches.

For the reasons explained in this Opinion, the Court grants in part and denies in part Plaintiffs' motion. The Court grants Plaintiffs' motion to dismiss Defendant's counterclaim and affirmative defense for inequitable conduct. The Court denies Plaintiffs' motion to strike Defendant's affirmative defenses of laches and estoppel.

## II.     BACKGROUND ON THE INEQUITABLE CONDUCT DEFENSE

For at least the last decade, the Federal Circuit has been making it more difficult to plead the inequitable conduct defense. Two recent cases on this point are *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) and *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (May 25, 2011 Fed. Cir. 2011) (en banc).

In *Exergen,* the Federal Circuit increased the level of specificity with which an accused infringer must plead inequitable conduct under the "particularity" standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Exergen* will be discussed in more detail in later sections of this Opinion.

To establish the defense of inequitable conduct, the challenger must prove by clear and convincing evidence that an individual associated with the prosecution of a patent application or maintenance of a patent (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information; and (2) intended to deceive the USPTO. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

One change that *Therasense* made in the law of inequitable conduct is that it changed the standard for establishing "materiality" of a misrepresentation or omission. Before *Therasense*, the Federal Circuit generally used a "reasonable examiner" standard for determining materiality (e.g., a prior art reference is material if there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.). *Id.* at 1288. In *Therasense*, the Federal Circuit adopted a "but-for" standard for materiality as the general rule. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim [to issue in a patent] had it been aware of the undisclosed prior art.

Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed a claim had it been aware of the undisclosed prior art." *Id*. at 1291.[1]

As for the element of intent to deceive the USPTO, *Therasense* made clear that the accused infringer must prove by clear and convincing evidence that the patentee made a "deliberate decision" to deceive the USPTO. *Id*. at 1290. Simply failing to submit material prior art does not constitute inequitable conduct. Rather, the "intent" requirement means that the party asserting the inequitable conduct defense must prove by clear and convincing evidence "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id*. "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id*.

Because direct evidence of deceptive intent is rare, *Therasense* also reconfirmed that a district court may infer intent from indirect and circumstantial evidence. "However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence. Indeed, the evidence must be sufficient to require a showing of deceitful intent in light of all the circumstances. Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id*. at 1290-91 (citation and quotations omitted).

"Because the party alleging inequitable conduct bears the burden of proof, the patentee need not offer any good faith explanation unless the accused infringer first proves a threshold level of intent to deceive by clear and convincing evidence. The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive." *Id*. at 1291 (quotations

---

[1] There is one exception to this general rule of having to prove but-for materiality that is not applicable to this case and that is where the patentee engaged in "affirmative egregious misconduct." *Id*. "When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Id*. However, the Federal Circuit made clear that "neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality." *Id*. at 1292-1293.

3

and citations omitted).

## III. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Recticel Automobilsysteme GMBH and Recticel Interiors North America, Inc. (collectively "Recticel" or "Plaintiffs) filed this patent infringement lawsuit against the Defendant Automotive Components Holdings LLC ("ACH" or "Defendant") on March 8, 2011. (Doc. No. 1.) Recticel's Complaint alleges that ACH has infringed U.S. Patent No. 6,071,619 ('619 Patent). The '619 Patent generally relates to making synthetic leather type materials for the interior of an automobile such as a dash-board or door panel. The claims of the patent call for inserting two "elastomeric" type materials into a mold to make the synthetic leather type material.

On May 10, 2010, ACH filed its "Answer to Complaint, Affirmative Defenses, and Counterclaims." (Doc. No. 23.) Relevant to the instant motion, ACH included a counterclaim and affirmative defense alleging that the '619 Patent is unenforceable due to inequitable conduct committed by Recticel in prosecuting the '619 Patent. Specifically, ACH alleges Recticel only disclosed prior art "non-paint elastomeric type applications and processes" and did not disclose "prior art relating to paint-type [elastomeric] applications and processes." (*See, e.g., Countercl.* ¶¶ 18-34.) ACH did not allege that Recticel knew of any particular prior art reference that anticipated or rendered obvious any claim in the '619 Patent and deliberately chose not to disclose that prior art reference to the USPTO.

The specific allegations of inequitable conduct in the Defendants' counterclaim have been reprinted below:

### COUNT III
### INEQUITABLE CONDUCT

\* \* \*

> 18. The '619 Patent is unenforceable due to inequitable conduct by the applicants and their attorneys in prosecuting the '619 Patent before the United States Patent and Trademark Office ("PTO"). Specifically, the '619 Patent is unenforceable under the pleading requirements for inequitable conduct as set forth by the Federal Circuit in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).
>
> 19. The applicants and their attorney/agent representatives at Sughrue, Mion, Zinn, Macpeak & Seas, PLLC, including George S. Jones and Waddell A. Biggart, failed to disclose prior art relating to paint-type applications and processes

4

during the prosecution of the '619 Patent, thereby intentionally misleading the Examiner into considering only non-paint, elastomeric type applications and processes.

20. During prosecution of the '619 Patent, the applicants and their attorney/agent representatives only cited art regarding non-paint elastomeric type applications and processes in the specification of the '619 Patent, failing to disclose prior art relating to paint-type applications and processes. This is particularly egregious in light of the Plaintiff's Infringement Contentions which indicate that Plaintiff considers paint-type applications and processes relevant to the '619 Patent.

21. During prosecution of the '619 Patent the applicants and their attorney/agent representatives only cited art regarding non-paint elastomeric type applications and processes in the Information Disclosure Statement filed December 2, 1996, failing to disclose prior art relating to paint-type applications and processes. This is particularly egregious in light of the Plaintiff's Infringement Contentions which indicate that Plaintiff considers paint-type applications and processes relevant to the '619 Patent.

22. The applicants and their attorney/agent representatives failed to disclose prior art relating to paint-type applications and processes at any time during prosecution of the '619 Patent.

23. The applicants and their attorney/agent representatives failure to disclose prior art relating to paint-type applications and processes is evident in the prosecution history of the '619 Patent.

24. During prosecution of the '619 Patent, the applicants and their attorney/agent representatives intentionally misled the Examiner into only limiting his search and his scope of prior art to only non-paint, elastomeric applications and applications.

25. The applicants and/or their attorney/agent representatives intentionally misled the Examiner into only considering non-paint type, elastomeric materials. This is evidenced by the art cited by the Examiner during prosecution of the '619 Patent. For example, U.S. Patent No. 5,328,349 to Minke et al. relates to "distribution of the PVC powder capable of forming a gel takes place, which is brought into contact with the hot mold . . . " Col.1, lines 40-45.

26. The applicants and/or their attorney/agent representatives intentionally misled the Examiner into only considering non-paint type, elastomeric materials. This is evidenced by the Non-Final Office Action issued on October 19, 1998, in which the Examiner rejected certain claims over U.S. Patent No. 5,370,831 to Blair et al., relating to "providing a stationary hot mold surface toward which are sprayed casting material particles from a feed hopper, wherein particles melt to form a skin . . ."

27. The applicants and their attorney/agent representatives intentionally misled the Examiner into only considering non-paint type, elastomeric materials. In the specification of the '619 Patent, applicants describe a two-part mold technique:

> "According to the two-part mould technique, as disclosed in EP-A-0 386 818 of the present application, two differently coloured elastomeric materials are sprayed onto the two mould parts and subsequently pressed together."
> (Column 1, lines 35-44).

5

28. The applicants and their attorney/agent representatives intentionally misled the Examiner into only considering non-paint type, elastomeric materials. The EP-A-0 386 818 reference discloses the commercial need and use of elastomeric materials having a thickness in the millimeter range:

> "Due to the fact that in this way a very thin film, having a thickness in the range of microns is thus formed, and in order to obtain a commercially marketable product, care has to be taken that the reaction mixture in the mould forms a sufficiently strong and dense skin . . ." (Page 2, lines 17-20).

29. The applicants and their attorney/agent representatives intentionally misled the Examiner into only considering non-paint type, elastomeric materials. In the specification of the '619 Patent, applicants describe the elastomeric materials used in the method:

> "As to the elastomeric materials used in the method according to the present invention, reference is made in particular to the light-stable polyurethane elastomeric materials disclosed in EP-A-0279246 of the present applicant." (Column 5, lines 20-25).

30. The applicants and their attorney/agent representatives intentionally misled the Examiner into only considering non-paint type, elastomeric materials. The EP-A-0379246 reference discloses a sufficiently thick, viscous elastomeric material and distinguishes the material from paint:

> "A sufficiently think and homogenous polyurethane layer can be applied to a surface, . . . which is relatively viscous and gels quickly in order to prevent the run off of the material . . . More particularly, it is important that a too quick gelation does not occur during the spraying . . . sufficient flow of the reactive mixture . . . somewhat in an analogous manner as it is the case with paint." (Page 2, lines 10-20).

31. The applicants and their attorney/agent representatives intentionally misled the Examiner into only considering non-paint type, elastomeric materials. The specification of the '619 Patent further distinguishes paint from the elastomeric materials in that it describes that:

> "Using lacquers to paint the different portions of the skins afterwards . . ." (Column 1, lines 45-46).

32. The applicants and their attorney/agent representatives knew or should have known of prior art relating to paint-type applications and processes, as applicants are merchants in this field.

33. Because applicants and their attorney/agent representatives clearly consider paint-type applications and processes relevant to the '619 Patent, as is evidenced by the Plaintiff's Infringement Contentions, applicants and their attorney/agent representatives should have disclosed this prior art to the PTO.

34. The applicants and their attorney/agent representatives withheld prior art relating to the paint-type applications with the intent to deceive and mislead the PTO from considering such art.

Defendants' Counterclaim, Doc. No. 23 ¶¶ 18-34.)

On April 25, 2011, Recticel filed the instant motion to dismiss. Recticel argues that ACH has failed to set forth sufficient factual bases for its inequitable conduct counterclaim and affirmative defense according to *Exergen*. Recticel also argues that ACH's affirmative defenses of laches and estoppel should be dismissed because ACH failed to plead the affirmative defenses according to the pleading standard set forth by the Supreme Court in the cases of *Twombly* and *Iqbal*. ACH opposes the motion.

## IV.  LEGAL STANDARDS FOR PLEADING CAUSES OF ACTION

Rules 8(a) and 9 set forth the standards for pleading causes of action. Rule 8(a)(2) sets forth the default general pleading standard, while Rule 9 sets forth the pleading standard for certain types of special matters such as inequitable conduct.

Recently, the Supreme Court, in the cases of *Twombly* and *Iqbal* changed the standard for pleading a cause of action under Rule 8(a)(2). *Twombly* and *Iqbal* establish a Plausibility" pleading standard for Rule 8(a)(2). Pursuant to *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss [under Rule 8(a)(2)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. A court must treat all well-pleaded factual allegations in the pleading as true. However, "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss. *Id.* (discussing the general pleading requirements of Rule 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

Rule 9(b) sets forth the standard for pleading fraud and conditions of the mind such as "intent." Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a persons mind may be alleged generally."

The Federal Circuit has held that "inequitable conduct, while a broader concept than fraud,

7

must be pled with particularity under Rule 9(b)." *Exergen*, 575 F.3d at 1326. In *Exergen*, the Federal Circuit articulated the standard for pleading inequitable conduct under Rule 9(b). *Exergen* created new law.

According to *Exergen*, a pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b). *Id.* at 1326-27. A pleading alleging inequitable conduct must "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29. Specifically, the Federal Circuit in *Exergen* summarized the standard for pleading inequitable conduct as follows:

> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this *1329 information with a specific intent to deceive the PTO.[FN5]
>
> FN5. A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith. *See Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.) (declining to infer fraudulent intent where "the complaint makes clear that Cambex publicized its IBM memory 'trade-in' practice with a candor that seems inconsistent with knowledge of illegality or fear of a lawsuit"), *superseded by statute on other grounds,* Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737. In contrast to the pleading stage, to prevail on the merits, the accused infringer must prove both materiality and intent by clear and convincing evidence. Whereas an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b), this inference must be "the *single most reasonable* inference able to be drawn from the evidence to meet the clear and convincing standard."

*Id*. at 1328-29 (emphasis added) (some citations omitted).

## V.     ANALYSIS

### A.     INEQUITABLE CONDUCT COUNTERCLAIM

In its motion to dismiss, Recticel argues that ACH's inequitable conduct counterclaim fails to allege sufficient factual bases on the issues of materiality and intent as required by *Exergen*. Accordingly, the Court will review ACH's allegations of materiality and intent in light of both *Exergen* and *Therasense*.

### MATERIALITY

In order to plead a claim of inequitable conduct with "particularity," *Exergen* requires that "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328.

The Court finds that ACH's counterclaim does not sufficiently identify the "what", "where", and "how" of the alleged material omission.

"The What" and "The Where" – According to *Exergen*, the inequitable conduct pleading must identify the material misrepresentation or omission and where the material information is located. *Id*. For example, if a patent applicant is alleged to have failed to disclose a piece of material prior art to the USPTO, the inequitable conduct pleading must identify the prior art that was omitted, where in the prior art the material information is located, and which claim limitations in the patent-in-suit the material information is relevant to. *Id*. The Court finds that ACH did not adequately plead the "what" and "where" of a material misrepresentation or omission. ACH's counterclaim does not allege that any specific prior art reference was intentionally withheld from the USPTO, nor does ACH's counterclaim explain where the particular material information is located within the prior art reference. ACH simply alleges that Recticel "failed to disclose to the USPTO all prior art related to paint-type applications and processes." (Resp. Br. at pgs. 4-5, Dkt. No. 27.) Under the facts of this case, the Court finds the factual allegations of the "what" and "where" in ACH's counterclaim to be insufficient. In order for the Court to assess the "but-for" standard for materiality set forth in *Therasense*, a counterclaim will normally need to identify a specific prior art reference and where in the prior art the material information is located.

"The How" – The inequitable conduct claim must explain how the USPTO would have used this material information in assessing patentability. *Exergen*, 575 F.3d at 1229-30. In its counterclaim, ACH did not allege any specific prior art reference was withheld from the USPTO, nor did it explain why a prior art reference was "material" to the patentability of the '619 Patent as defined by *Therasense*. In *Therasense*, the Federal Circuit changed the law and established a but-for standard for materiality (i.e., that the USPTO would not have granted a claim in the patent-in-suit if the prior art would have been brought to the USPTO's attention). It appears that ACH attempted to plead its inequitable conduct counterclaim under the former standard for materiality which was that "[i]nformation is material when a reasonable [USPTO patent] examiner would consider it important in deciding whether to allow the application to issue as a patent." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008). The but-for standard of *Therasense* is more difficult to prove and ACH's counterclaim does not contain sufficient factual allegations alleging how the USPTO would have used the prior art reference in rejecting a claim in the patent application that ultimately issued into the '619 Patent.

## INTENT

*Exergen* instructs that "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329-30 n.5. In contrast to the trial stage of a case where an accused infringer must establish intent to deceive the USPTO by clear and convincing evidence, at the pleading stage, the accused infringer must only show a reasonable inference of intent based on the allegations of underlying fact. *Id.*

In its response brief, ACH argues that paragraphs 32 through 34 of its counterclaim adequately plead the "intent" element and satisfy *Exergen*.

10

The Court finds that ACH has not pled facts that show a reasonable inference of deceptive intent to mislead the USPTO. In fact, in paragraph 32 of its counterclaim, ACH only generally pleads that Recticel "knew or should have known" of the undisclosed prior art paint-type applications and processes without any factual support. The other allegations in ACH's counterclaim do not state facts that establish a reasonable inference that Recticel intentionally deceived the USPTO. Rather, ACH's counterclaim contains conclusory assertions of intent. These types of naked allegations of intent are insufficient under *Exergen*. "A reasonable inference [of intent] is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id*. at 1329-30 n.5. There is nothing in the well pleaded facts from which the Court could reasonably infer that Recticel knew of a prior art reference, knew of its materiality, and withheld the prior art reference with the intent to deceive the USPTO. Moreover, in *Therasense*, the Federal Circuit recognized that it long ago rejected a "should have known" standard for establishing "intent." *Therasense*, 649 F.3d at 1290 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc*., 863 F.2d 867, 876 (Fed. Cir. 1988). The Federal Circuit in *Therasense* also clearly held that "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to PTO does not prove specific intent to deceive." *Id*.

    **B.**    **AFFIRMATIVE DEFENSES**

In its Answer, ACH included affirmative defenses of inequitable conduct, estoppel, and laches. ACH pled the affirmative defenses in conclusory fashion as follows:

> **AFFIRMATIVE DEFENSES AND/OR SPECIAL DEFENSES**
> \*   \*   \*
> 5. U.S. Patent No. 6,071,619 is unenforceable because of inequitable conduct committed during prosecution of the '619 Patent.
>
> 6. Plaintiffs' Complaint, and each and every cause asserted herein, is barred, in whole or in part, by the doctrine of estoppel.
>
> 7. Plaintiffs' Complaint, and each and every cause asserted therein, is barred, in whole or part, by the doctrine of laches.

(Answer at p. 3, Dkt. No. 23.)

Recticel argues that these affirmative defenses should be dismissed or stricken for failing to

set forth any supporting facts.

As for ACH's affirmative defense of inequitable conduct, Recticel argues that the defense should be dismissed because inequitable conduct must be pled with particularity of Rule 9 as discussed above. ACH relies on the factual allegations of inequitable conduct contained in its counterclaim to support this affirmative defense. Because the Court is dismissing ACH's counterclaim for inequitable conduct, the Court will also dismiss ACH's affirmative defense for inequitable conduct.

As for ACH's affirmative defenses of laches and estoppel, Recticel argues that such affirmative defenses must meet the pleading standards of *Twombly* and *Iqbal*. ACH argues that the holdings of *Twombly* and *Iqbal* do not apply to affirmative defenses.

Accordingly, the issue before the Court is whether the pleading standards articulated by the Supreme Court in *Twombly* and *Iqbal* apply to affirmative defenses. In a prior case, this Court held that *Twombly* and *Iqbal* do not apply to affirmative defenses. *See First Nat'l Ins. Co. v. Camps Servs., Ltd.*, 2009 WL 22861 (E.D. Mich. 2009) (Cox, J.) Neither the Sixth Circuit nor Federal Circuit have resolved the issue of whether the pleading standards of *Twombly* and *Iqbal* apply to affirmative defenses. In light of this Court's prior decision, the Court will deny Recticel's motion to strike ACH's affirmative defenses of laches and estoppel.

## VI.    CONCLUSION

For the reasons explained above, the Court hereby dismisses ACH's counterclaim and affirmative defense for inequitable conduct. The Court denies Plaintiffs' motion to strike Defendant's affirmative defenses of laches and estoppel.

The Court recognizes that the Federal Circuit decided *Therasense* after ACH filed its inequitable conduct counterclaim and after ACH filed its response brief to the present motion. In light of this change in the law, ACH may file a motion for leave to file a new inequitable conduct counterclaim that meets the requirements of *Exergen* and *Therasense*. However, the Court cautions ACH that it must plead specific facts in any new proposed counterclaim showing that Recticel knew of a specific prior art reference, knew that it was material, and deliberately withheld the reference

with the intent to deceive the USPTO.

      SO ORDERED

                              S/Sean F. Cox  
                              Sean F. Cox  
                              United States District Judge

Dated: November 3, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 3, 2011, by electronic and/or ordinary mail.

                              S/Jennifer Hernandez  
                              Case Manager